UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL R. BLEZARD | CIVIL ACTION NO.: |
| : | 303CV0161 (MRK) |
| Plaintiff : | |
| : | |
| V. : | |
| : | |
| THEMISTOS & DANE, P.C. : | |
| : | |
| Defendant : | NOVEMBER 25, 2003 |
| : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Pursuant to Rules 34(b) and 37(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Rules 9(a) and 9(d)(3) of the Local Civil Rules of the United States District Court for the District of Connecticut ("D.Conn.L.Civ.R."), plaintiff, Michael R. Blezard herein submits this Memorandum of Law in support of his Motion to Compel the production of documents by the defendant, Themistos & Dane, P.C. in response to the plaintiff, Michael R. Blezard's Requests for Production dated May 30, 2003 (the "Document Requests").

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

BERMAN AND SABLE
100 PEARL STREET, HARTFORD, CONNECTICUT 06103
(860) 527-9699  •  JURIS NO. 03840

I.  **FACTUAL BACKGROUND**

In the Spring of 1995, the plaintiff, Michael R. Blezard ("Blezard" or "Plaintiff") applied for a position as a accountant at the accounting firm of Themistos, Olszewski & Dane, P.C. which is now known as Themistos & Dane, P.C. ("Themistos" or "Defendant"). On May 25, 1995, Themistos sent an offer letter ("Offer Letter"), to Blezard offering to Blezard a position as an accounting manager. Blezard accepted the offer of employment as an accounting manager.

During preliminary discussions between Blezard and Themistos, it was agreed that Blezard would devote his time and effort on Themistos' behalf in an attempt to develop business for Themistos in Blezard's home State of Connecticut. At all times during his employment with Themistos, Blezard resided within the State of Connecticut. In addition, during said discussions, Themistos by and through its agents, employees and/or representatives made certain representations, as statements of fact, to Blezard, including but not limited to: that Blezard was being hired under the "partner in training program" and that Themistos was a profitable and solvent accounting firm which followed prudent business practices.

At no time during Blezard's job interviews with Themistos was he informed that as a condition of his employment that he would be required to sign restrictive covenants which ran in favor of Themistos concerning non-solicitation or non-competition. The Offer Letter

2

issued by Themistos to Blezard failed to inform Blezard that he would subsequently be required to sign restrictive covenants concerning non-solicitation or non-competition which ran in favor of the Themistos. On or about July 24, 1995, Blezard was required to execute an agreement ("Agreement"), which contained a series of restrictive covenants which ran in favor of Themistos. Blezard was surprised and dismayed that he was now being required to execute the Agreement and that said Agreement had not been mentioned, referenced or otherwise disclosed during his earlier interviews with Themistos or in the Offer Letter.

Blezard did not want to execute the Agreement and only executed the Agreement after he was informed that his failure to do so would "cause serious problems for him". Blezard reluctantly felt compelled to execute the Agreement and did so at his home in the State of Connecticut.

The Agreement contains an anti-solicitation clause which states as follows:

> "I hereby agree that for a period of twenty-four (24) months immediately following my termination of employment with the corporation for any reason, that I should neither call nor solicit, either for myself or for any other persons or firms, any of the clients of the corporation for whom I have performed services, or with whom I have become acquainted, nor shall I make known to any person or firms, either directly or indirectly, the names or addresses of any such clients or any other information relating in any manner to the Corporation's business relationship with such clients."

In addition, the Agreement also contains an anti-competition clause which reads as follows:

3

"Upon my termination of employment with the Corporation for any reason and further upon any then existing client or the office desired to become my client, I hereby agree to pay to the Corporation a sum equal to one hundred fifty (150%) percent of the previous year's gross billings for said client. The aforesaid sum is to be paid by me in two (2) equal installments, with the first such installment being due and payable six (6) month's after notice to the Corporation has been given by the undersigned and/or by the client as to desire to become my client, and the second equal installment to be paid six (6) month's thereafter. The aforesaid obligation shall be evidenced by my executing a Promissory Note in an amount equal to the aforesaid installments."

Blezard accepted the offer of employment from Themistos based upon express and implied representations made by representatives, agents and/or employees of Themistos regarding the status of the accounting firm, as well as the accounting practices of Themistos. Defendant's agents, employees and/or representatives specifically represented to Blezard that he was being hired under the "partner in training program" and that Themistos & Dane, P.C. was a profitable and solvent accounting firm which followed prudent business practices. Defendant's agents, employees, and/or representatives made these representations for the express purpose of inducing Blezard to accept the offer of employment from Themistos. In reliance upon the express representations made by Defendant's agents, employees and/or representatives, Blezard accepted the employment offer from Themistos. Initial discovery has revealed that these representations were false and either known to be false at the time made, or carelessly and negligently made.

4

Specifically, Defendant was not following prudent business practices at the time it hired Blezard as it assumed the personal debt in the amount of $308,139.00 of the three individual shareholders; was showing a net operating loss due to the fact that the Defendant assumed the personal debt of the three individual shareholders; and was paying interest to the three individual shareholders of Defendant on their assigned accrual basis capital to Defendant, thereby reducing the draw pool from which bonuses were paid. None of the foregoing was disclosed to Blezard during any of the interviews that he had, nor was any information disclosed to Blezard after he specifically asked Defendant's agents, employees and/or representatives whether Themistos & Dane, P.C. was a profitable accounting firm that followed prudent business practices. Defendant's agents, employees and/or representatives intentionally, negligently and/or fraudulently misrepresented to Blezard the true status of the Defendant, Themistos & Dane, P.C. Subsequently, on or about July 15, 2002 Blezard terminated his employment with Themistos. Mr. Blezard left the employ of Themistos after he discovered that pursuant to the offer of equity ownership to him by Themistos & Dane that he was expected to assume and become responsible for $619,236.00 of debt, some of which was personal debt obligations which years earlier the firm had assumed.

A dispute has arisen between Blezard and Themistos concerning whether the Agreement is enforceable as a matter of law and/or whether the Agreement violates public

BERMAN AND SABLE
100 PEARL STREET, HARTFORD, CONNECTICUT 06103
(860) 527-9699   •   JURIS NO. 03840

policy. It is the position of Blezard that the Agreement is void and of no legal effect because it is

    a.    void for lack of consideration;

    b.    constitutes an adhesion contract which violates public policy;

    c.    violates public policy due to its anti-competitive nature;

    d.    is overly broad and excessive in its scope because it lacks geographic limitations and because its duration is too long;

    e.    violates public policy in that it constitutes an unreasonable restraint on trade; and

    f.    was negligently and/or fraudulently induced.

Said restrictive covenants are unenforceable as they are punitive in nature and are not designed to protect the good will of Themistos.

Moreover, Themistos agreed to pay to Blezard personal, sick and vacation time earned but not used in the form of "unused total days" on an annual basis. From August 31, 1995 through July 15, 2002 Themistos has failed to pay to Blezard all personal, sick and vacation time which accrued but which he had not used. Blezard is entitled to payment for unused total days in the amount of $16,977.97. Themistos has breached its agreement with Blezard in that Themistos has failed, neglected and/or refused to pay said sums which are due and owing to Blezard and as a result Blezard has been damaged.

**BERMAN AND SABLE**
100 PEARL STREET, HARTFORD, CONNECTICUT 06103
(860) 527-9699  •  JURIS NO. 03840

In addition, Blezard was entitled to a bonus during his employment with Themistos. Blezard entered into an Income Principle Bonus Formula with Themistos for the fiscal years 2000 through 2002. Themistos has failed to pay all bonus sums due and owing to Blezard from the Income Principle Bonus Formula for the years 2000 through 2002. Blezard is entitled to additional bonus payments in the amount of $61,448.02 which reflects bonus sums due and owing to him. Moreover, Themistos has failed to pay commissions due and owing to Blezard. Blezard is entitled to commissions in the amount of $4,559.50 which reflects commissions due and owing to him. Themistos has breached its employment agreement with Blezard for the non-payment of bonuses and commissions, in that Themistos has failed, neglected and/or refused to pay said bonus and commission sums which were and are due to Blezard and as a result Blezard has been damaged. Themistos has failed, neglected and/or refused in bad faith and for arbitrary reasons to pay bonus and commissions amounts due to Blezard for fiscal years 2000 through 2002. As a result of the onerous, wrongful, deceptive and unlawful conduct of the Defendant with respect to the employment offer and Agreement, the Plaintiff has suffered (and continues to suffer) substantial damages.

## II.  PROCEDURAL BACKGROUND

On May 30, 2003, the Plaintiff served the Defendant with the Document Requests. A copy of said Document Requests is attached hereto as **Exhibit A**. On July 31, 2003, the

Defendant served "Objections and Responses" ("Objection"), to the Document Requests. A copy of said Objections is attached hereto as **Exhibit B**.

Thereafter, on August 27, 2003 Plaintiff's counsel, in good faith, conferred, via telephone, with counsel for the Defendant, in an effort to resolve this dispute without Court intervention. However, said effort was not successful. See Affidavit of James W. Oliver, attached to the Plaintiff's "Motion to Compel" as Exhibit A.

### III. ARGUMENT

#### A. The Relevant Legal Standards

Fed.R.Civ.P. 26(b)(1) provides, in part, that

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Further, "[i]f objection is made" to requests for production, "[t]he party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof . . . ." Fed.R.Civ.P. 34(b). Pursuant to the provisions of Fed.R.Civ.P. 37(a), "[a] party . . . may apply for an order compelling disclosure or discovery . . . ."

8

Fed.R.Civ.P. 26 delineates the general provisions concerning discovery. The language in Rule 26(b)(1) as to any matter "relevant to the subject matter involved in the pending action" has been construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). It is well established that relevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself. "Reasonably calculated to lead to the discovery of admissible evidence" has been interpreted to mean "any possibility that the information sought may be relevant to the subject matter of the action." Mallinckrodt Chemical Works v. Goldman, Saks & Co., 58 F.R.D. 348, 353 (S.D.N.Y. 1973). Discovery is to be considered relevant when there is any possibility that the information sought may be relevant to the subject matter of the action. U.S. v. International Business Machines Corp., 66 F.R.D. 215, 218 (S.D.N.Y. 1974).

    B.    Document Request Nos. 4 and 5

"4.    Any and all documents relating to, concerning and including any and all offer letters that were sent out to potential employees of the Defendant, Themistos & Dane, P.C., for the years 1994 through 2003."

"5.    Any and all documents relating to, concerning and including any and all restrictive covenants such as non-compete agreements and non-solicitation agreements that the Defendant, Themistos & Dane, P.C., maintained or issued for the years 1994 through 2003."

Document Requests, p. 7 (**Exh. A**).

9

There is no question that Document Request Nos. 4 and 5 seek documents that are "relevant" and "reasonably calculated to lead to the discovery of admissible evidence". Fed.R.Civ.P. 26(b)(1). The Defendant's "offer letters" bear directly on whether Defendant, Themistos & Dane, P.C. mentioned, referenced or otherwise disclosed to potential employees that they would be required to execute non-compete and/or non-solicitation agreements as a condition of their employment with the Defendant, Themistos & Dane, P.C. Defendant objects to production of such documents unrelated to the Plaintiff. However, it is clearly relevant to determine if it was, in fact, the Defendant's policy to provide any details, information or disclose to potential employees the requirement to execute a non-compete and/or non-solicitation agreement in its offer letters to other potential employees besides the Plaintiff.[1]

As for the documents requested pursuant to Document Request No. 5 (restrictive covenants such as non-solicitation agreements and non-compete agreements), these documents are clearly relevant to the current action as they are the subject of this lawsuit. Once again Defendant has objected to production of such documents unrelated to the Plaintiff. It is relevant for the Plaintiff to determine: (a) if these non-compete/non-solicitation agreements were executed by all employees of Defendant; (b) to determine when Defendant

---

[1] It is the position of Themistos & Dane, that they did inform Blezard of the non-compete/non-solicitation agreement during his initial interview.

10

began issuing these types of non-compete/non-solicitation agreements to its employees; and (c) to determine if the language in said non-compete/non-solicitation agreements is similar to the language contained within the non-compete/non-solicitation agreement that Plaintiff was forced to sign during his employment with Defendant.

Therefore, the Defendant's objections are totally without merit. See Objections, pp. 3-4 (**Exh. B**). Consequently, the Defendant should be compelled to produce all documents responsive to Document Request Nos. 4 and 5.

C.  Document Request Nos. 10 and 11

> "10.  Any and all documents relating to, concerning and including any and all calculation methods used by the Defendant, Themistos & Dane, P.C., regarding calculating bonuses for the years 1994 through 2002."
>
> "11.  All calculation documents used by the Defendant, Themistos & Dane, P.C., regarding calculating bonuses for the years 1994 through 2002."

Document Requests, p. 9 (**Exh. A**).

The Defendant has agreed to produce the above-referenced documentation only as said documents pertain to the Plaintiff, Michael R. Blezard directly but as to no other current or former employees of the Defendant. It is the position of the Defendant that the only relevant documents are those of Michael R. Blezard and not of other employees. However, it is clearly relevant to determine if the Defendant implemented the same bonus calculations for all employees or if Michael Blezard was treated differently.

**BERMAN AND SABLE**
100 PEARL STREET, HARTFORD, CONNECTICUT 06103
(860) 527-9699   •   JURIS NO. 03840

Moreover, this requested documentation is also highly material to, <u>inter alia</u>, Michael R. Blezards' claims for monies due to him for the miscalculations of bonuses paid to him or not paid to him. <u>See</u> Complaint, Counts Three and Four. For these reasons, and since Document Request Nos. 10 and 11 are narrowly-tailored and properly limited in scope, the Defendant should be compelled to furnish all documents responsive to said Document Requests.

    D.    <u>Document Request Nos. 16, 17, 20, 21, 22, 29, 31 and 32</u>

"16.    Any and all documents relating to, concerning and including any and all lease agreements entered into by the Defendant, Themistos & Dane, P.C., regarding real property located on 1341 Main Street, Springfield, Massachusetts 01103."

"17.    Any and all documents relating to and concerning the Defendant, Themistos and Dane, P.C.s' obligation to any and all banks in regards to securing any and all Note(s) and Mortgage(s) securing any and all real property located in Springfield, Massachusetts, personal property, and/or mortgage notes."

"20.    Any and all documents relating to, concerning and including all accounting records or reports, including but not limited to year end accounting records of the Defendant, Themistos & Dane, P.C., for the years 1994 through 2002."

"21.    Any and all documents relating to, concerning and including all tax returns of the Defendant, Themistos & Dane, P.C., for the years 1994 through 2002."

"22.    Any and all documents relating to, concerning and including all individual tax returns of the owners of the Defendant, Themistos & Dane, P.C., for the years 1994 through 2002."

12

> "29. Any and all stockholder, stock redemption, buy-in, buy-out and similar agreements relating to the defendant, Themistos & Dane, P.C., by and among stockholders and/or defendant, Themistos & Dane, P.C."
>
> "31. Any and all documents and agreements relating to, concerning and including Gary Oleszewski's stock redemption and departure settlement with the defendant and stockholders of defendant, Themistos & Dane, P.C."
>
> "32. All Form W-3 and all W-2's issued by Defendant, Themistos & Dane, P.C. for the years 1994 through 2002."

Document Requests, pp. 11-16 (**Exh. A**.)

As previously stated, it is Plaintiff's claim that the Defendant was not following prudent business practices as it was: (a) assuming the personal debt of the three individual shareholders (Tom Themistos, Gary Olszewski and Steve Dane); (b) was showing a net operating loss due to the fact that it assumed the personal debt of its three individual shareholders; and (c) was paying interest to its three individual shareholders on their capital with the Defendant on an annual basis thereby reducing the profit pool allocation from which bonuses were paid.[2]

The three shareholders of the Defendant at the time, Tom Themistos, Gary Olszewski and Steve Dane formed a real estate partnership entitled called "TOD Realty". <u>See</u> copies of excerpts from the deposition transcript of Gary Olszewski (attached hereto and made a part hereof as **Exhibit C**), dated June 24, 2003 ("Olszewski Deposition"), p. 56, lines 13-24. In

13

1989, this partnership was used to purchase the building that the Defendant accounting firm was located, 1341 Main Street, Springfield, Massachusetts, for a sum of One Million and Two Hundred Thousand and 00/100 ($1,200,000.00) Dollars. See Olszewski Deposition, p. 56, lines 16-24; Olszewski Deposition, p. 58, lines 16-17. TOD Realty obtained a loan for One Million Dollars from Bank of New England.[3] See Olszewski Deposition, p. 58, line 24 through p. 59, line 3. On or about March 8, 1989 TOD Realty executed a Collateral Assignment of Leases and Rent in favor of Bank of New England. See Olszewski Deposition, p. 59, lines 10-17. In addition, Tom Themistos, Gary Olszewski and Steve Dane executed personal guarantees, thereby individually guaranteeing the repayment of indebtedness from TOD Realty to Bank of New England. See Olszewski Deposition, p. 63, lines 7-12. Eventually the Note and Mortgage executed by TOD Realty to Bank of New England wound up in the hands of a company called Recoll Management. See Olszewski Deposition, p. 60, lines 8-11.

There came a time that TOD Realty stopped making the payments on said Mortgage and on or about June 30, 1994 went on to settle with Recoll Management (who was the holder of the Mortgage at the time) to dispose of the property. See Olszewski Deposition, p. 60, line 25 through p. 61, lines 1-13. Recoll Management was given a deed in lieu of foreclosure for

---

[2] The only eligible participants of the income pool (the term used for paying interest to shareholders) were the three equity owners.
[3] TOD Realty borrowed the remaining amount ($200,000.00) from Post Road.

14

BERMAN AND SABLE
100 PEARL STREET, HARTFORD, CONNECTICUT 06103
(860) 527-9699  •  JURIS NO. 03840

the property and eventually went on to sell said property for the sum of $180,000.[4] See Olszewski Deposition, p. 61 lines 18-25 through p. 62, lines 1-23. The three individual partners of TOD agreed to buy back the personal guarantees that they executed on behalf of TOD Realty for a total amount of $175,000. See Olszewski Deposition, p. 64, lines 9-11. Steve Dane initially made the payment of $175,000 to Recoll Management then eventually the Defendant accounting firm borrowed said sum from a bank to pay said amount to Steve Dane. See Olszewski Deposition, p. 65, lines 16-21. As of 1994 the $317,261.90 debt on the books of the Defendant accounting firm reflects a loan taken out to reimburse Steve Dane for his $175,000 payment to Recoll Management and to fund rent payments to TOD Realty in excess of market rents. See Olszewski Deposition, p. 68, lines 18-22. Therefore, the Defendant accounting firm had assumed the personal debt obligations of the three partners of TOD Realty for a real estate investment which had gone bad and, in which, the Defendant had no interest.[5]

Subsequently, the Defendant accounting firm went on to pay a bonus to its three shareholders Tom Themistos, Gary Olszewski and Steve Dane to dispose of the cash advances made to TOD Realty during the year. The three shareholders then used the bonus money to pay off the remaining debt obligations of TOD Realty to Recoll Management. The

---

[4] TOD Realty went on to settle on the mortgage it had with Post Road sometime in 1994.
[5] In fact, the Defendant was being charged "above market" rent at the facility by the three partners of TOD Realty. In sum, the entire transaction was to the detriment of the Defendant.

Defendant had to borrow money in order to pay the bonuses to its three shareholders, which in turn was used to repay their personal debt obligation to Recoll Management. This assumption of debt resulted in a net operating loss of $200,000 for Defendant. See Olszewski Deposition, pp. 69-72. None of this information was disclosed to Blezard at the time he was hired nor was he informed that "as a partner in training" that he would be expected to assume liability for these debts when he became a partner. At the conclusion of the partner in training program it was finally disclosed to Blezard that he was expected to assume responsibility for $619,236.00 of personal debt obligations of the three partners which was now on the books of the Defendant. Had this debt obligation been disclosed at the time of the job offer, Blezard would have never accepted said job offer. For these reasons and since Documents Request Nos. 16, 17, 20, 21, 22, 29, 31 and 32 are relevant, narrowly tailored and properly limited in scope, the Defendant should be compelled to furnish all documents responsive to said Document Requests.

    D.    <u>Document Request No. 24</u>

> "24.    Any and all copies of Defendant, Themistos & Dane, P.C.'s telephone bills from July 2002 through 2003 for all of Defendant's telephone services."

Document Request, p. 14 (**Exh. A**).

The documentation sought in Document Request No. 24 merely seeks the telephone bills of the Defendant "from July 2002 through 2003…" (approximately six months). Said

telephone bills are clearly "relevant" to the current action. Plaintiff received numerous phone calls from clients of Defendant after Plaintiff terminated his employment with Defendant. The clients of Defendant (clients whom had been receiving accounting services from Michael Blezard) informed Plaintiff that they were being harassed and pressured to decide if they were going to stay with the Defendant or take their business somewhere else i.e., seek the services of Plaintiff, Michael R. Blezard. The telephone bills will indicate when and how many calls were placed to clients of Defendant at the time of Plaintiff's termination with the Defendant.

  E.  Document Request No. 34

    "34. Any and all documents supporting the buy-out/merger of Brian L. David's CPA practice by Defendant, Themistos & Dane, P.C."

Document Request, p. 17 (**Exh. A**).

The documentation sought in Document Request No. 34 is not only "reasonably calculated to lead to the discovery of admissible evidence" but it is relevant to the current action. Upon information and believe, on or about September 1, 1998 Defendant, Themistos & Dane, P.C. purchased Brian David's CPA practice at market value. The market rate paid to Brian David was approximately sixty percent (60%) of gross billings. Defendant claims that the One Hundred and Fifty percent (150%) of gross billings that it is counter suing Plaintiff for was negotiated, non-punitive and fair. The actual transaction consummated between Defendant and Brian David will highlight the punitive nature of Defendant's non-compete

17

agreement as well as stipulations that are lacking that will show that the terms were not negotiated as asserted by Defendant.

    F.    <u>Document Request No. 37</u>

> "37.    Listing of any and all accounts receivable of defendant, Themistos & Dane, P.C., placed with collection agents for the period 1994 through 2003."

Document Request, p. 18 (**Exh. A**).

The documentation sought in Document Request No. 37 is "relevant" and highly material to, <u>inter alia</u>, Plaintiff's claims for monies due to him for the miscalculations of bonuses and commissions not paid to Plaintiff. <u>See</u> Complaint, Counts Three and Four.

## IV.    **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that the Court should compel the Defendant to produce all documents responsive to the Document Requests.

**BERMAN AND SABLE**
100 PEARL STREET, HARTFORD, CONNECTICUT 06103
(860) 527-9699 • JURIS NO. 03840

THE PLAINTIFF,
MICHAEL R. BLEZARD


By: *Jose A. Aguiar* (signature)
JAMES W. OLIVER
Federal Bar No.: ct02510
JOSÉ A. AGUIAR
Federal Bar No.: ct24658
Berman and Sable
100 Pearl Street, 10th Floor
Hartford, CT 06103
Tel:   (860) 527-9699
Fax:   (860) 527-9077
His Attorneys

F:\USERS\SHARED\LIT\Blezard, Mike\Memo of Law (mot to compel-Themistos).doc