UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CIVIL ACTION NO. 303CV161 (SRU)
(MRK)

| | |
|---|---|
| MICHAEL R. BLEZARD,<br>    Plaintiff<br>v.<br>THEMISTOS & DANE, P.C.,<br>    Defendant/Plaintiff in<br>    Counterclaim<br>and<br>THEMISTOS & DANE, P.C.,<br>    Plaintiff in Counterclaim<br>v.<br>PUE, LEIBOWITZ & CHICK, LLC,<br>    Defendant in Counterclaim | **MOTION TO COMPEL<br>ANSWERS TO INTERROGATORIES** |



   NOW COMES the Defendant, Themistos & Dane, P.C., and pursuant to the provisions of Rule 37 of the Local Civil Rules of the United States District Court for the District of Connecticut, hereby requests that the Court enter an Order requiring the Plaintiff, Michael R. Blezard to further answer Interrogatory Number 8 subsections b, e, and f and enter an Order requiring the Defendant in Counterclaim, Pue, Leibowitz & Chick, LLC, to further answer Interrogatory Number 10 subsections c, d, e, and f.

   As grounds therefore, The Defendant refers the Court's attention to the attached Memorandum of Law, filed herewith.

   WHEREFORE, the Defendant respectfully requests that the Court enter an Order requiring the Plaintiff, Michael R. Blezard, to further answer Interrogatory Number 8 subsections b, e, and f and enter an Order requiring the Defendant in Counterclaim, Pue, Leibowitz & Chick, LLC, to further answer Interrogatory Number 10 subsections c, d, e, and f.

**ORAL ARGUMENT REQUESTED – BY TELEPHONE IF POSSIBLE**

1

## CERTIFICATION OF COUNSEL

I, Paul H. Rothschild, hereby certify that I have made a good faith attempt to confer with Plaintiff's counsel, James W. Oliver, Esq., to attempt to resolve or narrow the issues relating to the within motion. An attempt was made to resolve these issues without relying on judicial intervention on March 24, 2004. Defendant's counsel contacted Plaintiff's and Defendant in Counterclaim's counsel requesting Interrogatory No. 8, subsections b, e, and f and Interrogatory No. 10, subsections c, d, e, and f, respectively, be responded to, as required under <u>Rule 37(a)(2) of the Local Civil Rules of the United States District Court for the District of Connecticut.</u> Attorney Oliver maintained his position that the information sought was irrelevant and stated he will not provide it.

_____
Paul H. Rothschild
Counsel to the Defendant, Themistos & Dane, P.C.

Respectfully submitted,
The Defendant, Themistos & Dane, P.C.,
By its Attorney,

_____
PAUL H. ROTHSCHILD, ESQ.
ADAM J. BASCH, ESQ.
BACON & WILSON, P.C.
33 State Street
Springfield, MA 01103
Ph: (413) 781-0560
Fax: (413) 739-7740
Juris #05693
Juris #25554
March 25, 2004

## CERTIFICATE OF SERVICE

I, ADAM J. BASCH, hereby certify that on March 25, 2004, I caused a copy of the foregoing Motion to Compel to be served upon all interested parties by mailing a copy thereof, postage prepaid, first class mail to:

James W. Oliver, Esq.
Berman and Sable
100 Pearl Street
Hartford, CT 06103

_____
ADAM J. BASCH

312109

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

CIVIL ACTION NO. 303CV161 (SRU)

| | |
|---|---|
| MICHAEL R. BLEZARD,<br>    Plaintiff<br>v.<br><br>THEMISTOS & DANE, P.C.,<br>    Defendant/Plaintiff in Counterclaim<br>and<br><br>THEMISTOS & DANE, P.C.,<br>    Plaintiff in Counterclaim<br>v.<br><br>PUE, LEIBOWITZ & CHICK, LLC,<br>    Defendant in Counterclaim | **MEMORANDAM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES** |

## STATEMENT OF FACTS

On or about January 23, 2003, the Plaintiff filed a Complaint and Demand for Jury Trial against Defendant, Themistos & Dane, P.C. (hereinafter "Defendant") praying for a declaratory judgment as to the enforceability of an employment contract entered into with the Defendants. The Plaintiff's complaint also alleges breach of an employment contract, breach of contract and breach of *Conn. Gen. Stat. §31-72 et. seq.* On or about February 13, 2003, the Defendant filed its response to the Plaintiff's allegations and in addition the Defendant filed counterclaims against the Plaintiff and Pue, Leibowitz & Chick, LLC. The Defendant alleges breach of contract, unjust enrichment, conversion, tortious interference with business expectations, tortious interference with contractual relations and violation of *CUTPA Conn. Gen. Stat. §42-110(a)*. Thereafter, on or about May 8, 2003, the Defendant served its first set of interrogatories and requests for production on the Plaintiff, Michael R. Blezard, and on the Defendant-in-Counterclaim, Pue, Leibowitz & Chick, LLC.

The Defendant's claims are essentially based on the breach of a non-solicitation agreement the Plaintiff signed with the Defendant, while in the employ of the Defendant. Said non-solicitation agreement states that if the Plaintiff, after cessation of his employment with the Defendant, performed accounting services for any of the former clients of the Defendant, he would be required to compensate the Defendant in an amount equal to 150% of any such client's previous year's billings with the Defendant.

1

Below is a true and accurate copy of the Interrogatory that was submitted to the Plaintiff, as well as his original and amended response (Plaintiff agreed to amend his response after counsel for both parties discussed the original response).

### INTERROGATORY NO. 8

Please state whether you or any employees at Pue have provided any accounting services for any "then existing clients" under the Agreement dated July 27, 1995 since the termination of your employment with the Defendant. If so, please describe in detail and with specificity:

    a) the name of each such client;
    b) all accounting services performed by you or anyone at Pue;
    c) whether you had performed any services for each such client before the termination of your employment with the Defendant;
    d) the period of time during which you or anyone else at Pue has performed accounting services for each such client;
    e) the amount of billing for accounting services rendered to each such client by you or anyone at Pue;
    f) the amount of payment received from each such client for accounting services by you or anyone at Pue.

### RESPONSE NO. 8

The objections contained in Plaintiff's Preliminary Objection/Objection to "General Instructions" and "Definitions" are hereby incorporated by reference and made objections to this Interrogatory as if fully set forth herein. Plaintiff further objects to this Interrogatory insofar as and/or to the extent that it seeks the disclosure of confidential, proprietary and/or trade secret information, documentation and/or other materials of Plaintiff and/or Counterclaim Defendant Pue, Leibowitz, & Chick, L.L.C.

Plaintiff also objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous.

### AMENDED RESPONSE NO. 8

The objections contained in Plaintiff's Preliminary Objection/Objection to "General Instructions" and "Definitions" are hereby incorporated by reference and made objections to this Interrogatory as if fully set forth herein. Plaintiff further objects to this Interrogatory insofar as and/or to the extent that it seeks the disclosure of confidential, proprietary and/or trade secret information, documentation and/or other materials of Plaintiff and/or Counterclaim Defendant Pue, Leibowitz, & Chick, L.L.C.

Plaintiff also objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous.

Subject to and without waiving the above-described objections, Plaintiff responds as follows:

    a)    See response to Interrogatory No. 7a*

    c)    Yes.

    d)    As requested by each client from July 16, 2002 to the present date.

\* Response No 7a included a list of all the former clients of the Defendant which the Plaintiff is now providing account services for.

Below is a true and accurate copy of the Interrogatory that was submitted to the Defendant in Counterclaim, as well as its original and amended response (Defendant in Counterclaim agreed to amend its response after counsel for both parties discussed the original response).

**INTERROGATORY NO. 10**

Please identify any former clients of the Defendant for whom Pue has performed accounting services since the commencement of the Plaintiff's employment at Pue. For each such client, please include:

    a)    The name of each such client;

    b)    When each such client first became a client at Pue;

    c)    Specify all services rendered by Pue to each such client;

    d)    Identify who at Pue rendered such services;

    e)    The amount of all billings for each such client since the commencement of the Plaintiff's employment at Pue;

    f)    Specify all work done for each such client for which billing has not yet been made;

    g)    Whether Pue performed any services for such client prior to July 15, 2002.

**RESPONSE:**

    The objections contained in Counterclaim Defendant's Preliminary Objection/Objection to "General Instructions" and "Definitions" are hereby incorporated by reference and made objections to this Interrogatory as if fully set forth herein. Counterclaim Defendant further objects to this Interrogatory insofar as and/or to the extent that it seeks the disclosure of confidential, proprietary and/or trade secret information, documentation and/or other materials of Counterclaim Defendant.

3

**AMENDED RESPONSE:**

The objections contained in Counterclaim Defendant's Preliminary Objection/Objection to "General Instructions" and "Definitions" are hereby incorporated by reference and made objections to this Interrogatory as if fully set forth herein. Counterclaim Defendant further objects to this Interrogatory insofar as and/or to the extent that it seeks the disclosure of confidential, proprietary and/or trade secret information, documentation and/or other materials of Counterclaim Defendant.

Counterclaim Defendant further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, vague and ambiguous.

Subject to and without waiving the above-described objections Counterclaim Defendant responds as follows:

a)  \*

b)  \*

g)  No.

\* Response No 10a&b included a list of all the former clients of the Defendant which the Plaintiff is now providing account services for, as well as the date those services began.

**ARGUMENT**

In both Mr. Blezard's and Pue, Leibowitz, and Chick, LLC answers and amended answers to interrogatories, they failed to provide information regarding the amount of billings for each of the Defendant's former clients since the commencement of the Plaintiff's employment a Pue, Leibowitz, and Chick, LLC.

The <u>Federal Rules of Civil Procedure</u> defines the scope of discovery, in pertinent part as follows:

1. Parties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of party seeking discovery or to the claim of defense of any party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. *It is not grounds for the objection that the information sought will be inadmissible at the trial if the information appears reasonably calculated to lead to the discovery of admissible evidence.* F.R. Civ. P. 26 (emphasis added).

Here, Interrogatory No. 8, subsections b, e, and f (directed to the Plaintiff) and Interrogatory No. 10, subsections c, d, e, and f (directed to the Defendant in Counterclaim), ask for information that is certainly relevant to the present proceedings directly, and if not, at least likely to lead to further discoverable information. The answers could contain information relating to the amount of damage the Defendant suffered as a result of the Plaintiff's breach. Considering the Plaintiff and Defendant in Counterclaim responded with a mixture of incomplete or evasive responses and objections and is unwilling to compromise on those positions, judicial intervention is necessary. <u>Rule 37(a)(2) of the Local Civil Rules of the United States District Court for the District of Connecticut</u>.

Interrogatory No. 8, subsections b, e, and f, and Interrogatory No. 10, subsections c, d, e, and f, have been tailored to specifically address the Defendant's claims, other then the breach of contract claim, including the claim that the Plaintiff and the Defendant in Counterclaim have violated CUTPA § 42-110(a) of the Connecticut General Statutes. The Connecticut courts have held that a former employee's breach of his fiduciary duty constitutes a reckless indifference to that employers rights and entitles the former employer to damages under CUTPA. *Vigneau v. Storch Engineers*, 15 Conn L. Rptr. 623. (Awarding punitive damages as well as attorney's fees under CUTPA for partner's breach of fiduciary duty owed to partnership.). See also *Larsen Chelsey Realty Company v. Larsen*, 232 Conn. 480 (1995). (Former employee's unfair competition by accepting job with competitor and taking action that harmed former employer may constitute violation of CUTPA). Even if this court were to find that the non-solicitation agreement signed by the Plaintiff was unenforceable, the Defendant can still recover under CUTPA.

Interrogatory No. 8, subsections b, e, and f and Interrogatory No. 10, subsections c, d, e, and f, specifically seek information regarding any "then existing clients" which Mr. Blezard has contacted or performed services for since terminating his employment with the Defendant. This information is specifically relevant to the case at hand in that said information is necessary in order to measure the damages suffered by the Defendant. *Blum v. Searles*, 1999 WL 669824 (ConnSuper)(copy attached). Under *Blum v. Searles*, the court held that although the non-solicitation agreement was unenforceable, because it was not assigned to the Plaintiff, the Defendant had violated CUTPA. In that case, two accountants left their employer's employ and formed their own accounting practice a day or two later. The court held that while still employed by their former employer, the Defendants had conversations with the Plaintiff's clients and informed them of their plan to leave and solicited their business. The court held that such actions violated CUTPA. As damages, the court assessed what the Defendant had billed the former clients of the Plaintiff.

In the case at hand, it can be assumed that the Defendant, Themistos & Dane, P.C., would have performed similar services, and generated similar billings, to their former clients. In order for the Defendant to receive this type of relief, the Defendant, and the Court, need to know how much the former clients of the Defendant have been billed by the Plaintiff and/or Defendant in Counterclaim. As a result, a response to said Interrogatories are necessary in order to proceed with the claim currently presented.

5

The Plaintiff has alleged in this action that the non-solicitation agreement between himself and the Defendant is unenforceable. If the Court was to adopt that position, then the Defendant may nevertheless be entitled to damages for lost clients as outlined in *Blum v. Searles*. Therefore, the information sought by Interrogatory No. 8, subsections b, e, and f, and Interrogatory No. 10, subsections c, d, e, and f, is certainly relevant to the present proceedings and is discoverable.

## CONCLUSION

Therefore, the Defendant requests that the Plaintiff, Michael R. Blezard be ordered to provide further answers to Interrogatory No. 8, subsections b, e, and f and the Defendant in Counterclaim, Pue, Liebowits and Chick, LLC, be ordered to provide further answers to Interrogatory No. 10, subsections c, d, e, and f, forthwith.

Respectfully submitted,
The Defendant,
Themistos & Dane, P.C.,
By its Attorney,

PAUL H. ROTHSCHILD, ESQUIRE
ADAM J. BASCH, ESQUIRE
BACON & WILSON, P.C.
33 State Street
Springfield, MA 01103
Ph: (413) 781-0560
Fax: (413) 739-7740
Juris #05693
Juris #25554
March 26, 2004

## CERTIFICATE OF SERVICE

I, ADAM J. BASCH, hereby certify that on March 26, 2004, I caused a copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Compel to be served upon all interested parties by mailing a copy thereof, postage prepaid, first class mail to:

James W. Oliver, Esq.
Berman and Sable
100 Pearl Street
Hartford, CT 06103

ADAM J. BASCH

276876

Not Reported in A.2d  
(Cite as: 1999 WL 669824 (Conn.Super.))

Page 1

C  
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

BLUM, SHAPIRO & COMPANY, P.C.,  
v.  
SEARLES & HOUSER, LLC, et al.

No. CV 990586283S.

Aug. 11, 1999.

FINDING OF FACT AND CONCLUSION OF LAW

BOOTH.

I. Introduction

*1 This action arises out of the pre- and post-employment activities of two former employees of the plaintiff Blum Shapiro. Blum Shapiro is a Connecticut professional corporation providing accounting and business consulting services to businesses and individuals.

Defendants, David C. Searles and Gary H. Houser are, by profession, accountants. Both Searles and Houser accepted employment with the accounting firm of Cole, Frago Cusick, Chessler and Co. Houser began working for Cole Frago on July 31, 1989. Searles began working for Cole Frago on December 20, 1990. The plaintiff has brought a 13-count writ. Counts 1 and 2 allege violation of a restrictive covenant by Searles and Houser respectively. Count 3 alleges unjust enrichment by S & H an accounting firm set up by Searles and Houser after they left the employment of Blum Shapiro. Counts 4 and 5 allege breach of fiduciary duty by Searles and Houser respectively. Counts 6 and 7 allege breach of duty by post-employment activities by each of the defendants. Count 8 alleges a violation of CUTPA § 42-110(a) et seq. of the Connecticut General Statutes by Searles. Count 9 alleges violation of CUTPA by Houser. Count 10 alleges violation of CUTPA by S & H. Counts 11 and 12 allege common law unfair competition, first by Searles and then by Houser. Count 13 alleges common law unfair competition by S & H.

II. Findings of Fact

1. Defendant, David C. Searles and Gary H. Houser are by profession accountants. Both Searles and Houser accepted employment with the accounting firm of Cole Frago. Houser began working for Cole Frago on July 31, 1989. Searles began work on December 20, 1990.

2. Both Searles and Houser executed separate covenants not to compete with Cole Frago and/or any successor or assign of Cole Frago. Searles and Houser continued to work for Cole Frago as at-will employees after executing their non-compete agreements.

3. Ms. Carol Scott, the Blum Shapiro director of human resources, testified that the first time she saw a non-compete agreement was after clearing out Mr. Houser's work after his resignation.

4. Blum Shapiro's accounting of the assets transferred to it shows no allocation of value made to covenants not to compete or to goodwill.

5. Cash journals of Cole Frago show substantial assets returning to Cole Frago and ultimately to Messrs. Cohen, Chessler and Guerriere.

6. At the time of the joining of the two accounting firms, Blum Shapiro did not have covenants not to compete with its own employees.

7. Certain partners of Cole Frago had relatively specific employment agreements with Blum Shapiro. Non Cole Frago partners had only general guarantees and when the Blum Shapiro employees' manual was explained to them there was no discussion of covenants not to compete.

8. On November 1, 1997, Cole Frago combined its operations into Blum Shapiro.

9. On November 1, 1997, Blum Shapiro entered into a letter agreement with Cole Frago Partners to combine the two accounting firms.

*2 10. Prior to executing the letter agreement, Cole Frago was a Connecticut limited liability company and Blum Shapiro was a professional corporation.

11. Pursuant to the letter agreement, Cole Frago's business operations were joined with Blum Shapiro. The plaintiff uses the term "merger" to describe the combination of Cole Frago and Blum Shapiro's accounting practices. It is noted that Connecticut General Statutes § 34-193(b) prohibits limited liability companies from merging with professional corporations. A professional corporation is free to acquire the assets of a limited liability company.

12. The members of Cole Frago and Blum Shapiro executed the letter agreement with an understanding that the letter agreement did not address the merger in every detail. This agreement, which appears to be the only agreement signed by the parties, expresses the intent of the parties. The

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

Not Reported in A.2d
(Cite as: 1999 WL 669824 (Conn.Super.))

Page 2

agreement is between Edward G. Chessler, Richard Guerriere and James Cohen in their individual capacities and a corporate entity Blum Shapiro & Co., P.C.

13. The intent of the letter is set forth in the opening paragraph where it is written:
> This letter sets forth our [Blum Shapiro's] understanding related to your [Messrs. Chessler, Cohen and Guerriere's] employment by Blum Shapiro & Co., P.C. (the Company) and services related to the transfer of certain client records to the company. The agreement provided in section 3 that the individual partners "have agreed to indemnify and hold [Blum Shapiro] harmless from any and all costs, expenses and/or claims [including reasonable attorneys fees] relating to the rendering of accounting services by the [individual partners] in the firm on behalf of Cole Frago clients prior to November 1, 1997 for which a claim is made ...

14. Searles and Houser continued to work for Blum Shapiro as employees-at-will for over a year's time after the joinder of the operation of the two accounting firms.

15. On November 16, 1998, Searles terminated his employment with Blum Shapiro and on November 17, 1998, Houser terminated his employment with Blum Shapiro.

16. On November 18, 1998, Searles and Houser formed Searles and Houser, LLC ("S & H"). S & H is a Connecticut limited liability corporation in the business of providing accounting and consulting services of the same kind provided by Blum Shapiro.

17. After terminating their employment with Blum Shapiro, Searles and Houser solicited and/or performed accounting services for a number of Blum Shapiro's clients.

18. The clients solicited or serviced by Searles and Houser were Action for Bridgeport Community Development, Joseph Deluca, Dr. Demayo, Diane L. Fountas, M.D., LLC, Griffin Corporation, Harts Market, Dr. Koliani, New Opportunities for Waterbury, Inc., Kathleen Owens, Mary Ann Owens, Michael Owens, Noel Owens, Subway Franchisee Advertising Fund Trust, and True Publishing Company.

19. While still employed by Blum Shapiro, the defendants had conversations with Blum Shapiro clients in which the clients were informed that the defendants were leaving Blum Shapiro.

*3 20. On the weekend before departing Blum Shapiro's employment, the defendants accessed information from the Blum Shapiro computer system which was related to their intention to solicit Blum Shapiro clients.

21. The defendants willfully failed to record some hours that they worked notwithstanding a Blum Shapiro directive that all time be recorded.

22. As a result of Mr. Houser's failure to record time, Blum Shapiro was denied the opportunity to bill $49,500.00 for work performed by Mr. Houser.

23. Although the time should have been recorded, the account had been billed to its maximum and it is unlikely that any of the $49,500.00 would have been billed or paid since the NOW billing shows existing "write offs" as of August of $57,000.00.

24. Paragraph 5 of the non-compete agreement also included a liquidated damage clause. If liquidated damages were awarded under that clause they would total $665,738.50.

25. Fees actually received by S & H from former Blum Shapiro clients total $100,255.00.

III. Conclusion of Law

1. Blum Shapiro is not entitled to enforce the covenant not to compete and liquidated damage provision.

2. Under Connecticut law, when a proprietor of a business transfers its business to another entity, restrictive covenants which are necessary to protect the transferred business may be deemed to be assigned to the purchaser. *Torrington Creamery vs. Davenport,* 126 Conn. 515, 12 A.2d 780 (1940). Blum Shapiro did not acquire all of the assets of Cole Frago. The two entities did not merge and Blum Shapiro assigned no value to any covenant not to compete nor to goodwill in acquiring certain assets of Cole Frago.

3. The Court concludes that Cole Frago did not intend to assign the covenants not to compete or liquidated damages provision to Blum Shapiro nor did Blum Shapiro expect to receive the covenants or damage provision.

4. The Court concludes that the covenants and damages provision were not assigned.

5. The liquidated damage provision is reasonable. See *St. Margaret's- McTernan School, Inc. v. Thompson,* 31 Conn.App. 594, 627 A.2d 449 (1993).

6. Because Searles and Houser were at-will employees there was valid consideration for the signing of the covenant not to compete. For example in *Russo Associates, Inc. v. Cachina,* 1995 WL line 4589, the court wrote:
> When a pre-existing contract of employment is terminable at will, no overt consideration is required to support an otherwise valid covenant not to compete. The law presumes that such a covenant is supported by the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 669824 (Conn.Super.))

Page 3

employer's implied promise to continue the employee's employment ... or his forbearance in not discharging the employee then and there.
*Russo Associates,* pp. 3 citing *Osborn v. Locke Steele Chain Company,* 153 Conn. 527, 531, 218 A.2d 526 (1966).

*4 7. In evaluating the reasonableness of a restrictive covenant, a court must consider:
  (a) the length of time the restriction operates;
  (b) the geographical area covered;
  (c) the fairness of the protection accorded to the employer;
  (d) the extent of the restraint on the employee's opportunity to pursue his chosen occupation;
  (e) the extent of interference with public interest.
*Russo Associates, Inc. v. Cachina,* 1995 WL 94589, 3 (Conn. *supra*).

In evaluating the reasonableness of the restrictive covenant, the Court finds the length of time to be reasonable, the geographical area to be reasonable, the extent of the restraint on the employee's opportunity to pursue his chosen occupation to be reasonable and the extent of the interference with public interest to be reasonable.

8. In view of the fact that at the time of the acquisition Blum Shapiro had no restrictive covenants with its own employees, the Court questions the reasonableness of the protection accorded to the employer by the restrictive covenant at issue.

9. To establish a CUTPA violation the plaintiff must show that
  (a) a person;
  (b) engaged in unfair methods of competition and unfair or deceptive acts or practices;
  (e) in the conduct or any trade or commerce.
Conn. Gen.Stat. § 42-110 (a) et seq.

10. Under CUTPA the plaintiff is entitled to punitive damages when the evidence establishes that the defendant acted with a "reckless indifference to the rights of others or with an intentional and wanton violation of those rights." *Gargano v. Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987).

11. The courts have recognized that the defendant's breach of the fiduciary duty owed to an employer constitutes a reckless indifference to the employer's rights. *Vigneau v. Storch Engineers,* 1995 WL 767984 (Conn.*supra*) (awarding punitive damages as well as attorneys fees under CUTPA for partner's breach of fiduciary duty owed to partnership). See also *Larsen Chelsey Realty Company v. Larsen,* 232 Conn. 480, 656 A.2d 1009 (1995) (former employee's unfair competition by accepting job with competitor and taking action that harmed former employer may constitute violation of CUTPA).

12. As a result of the defendant's failure to bill time, conversations with Blum Shapiro clients both before and after their termination and the solicitation of Blum Shapiro's clients, defendants have acted with reckless indifference in violation of CUTPA and Blum Shapiro is entitled to recover punitive damages and attorneys fees in addition to its actual damages.

## CONCLUSION

Enforcement of covenant not to compete, denied. Liquidated damages for violation of covenant not to compete, denied. Damages for failure to record pre-termination time, $0.00. Damages resulting from defendant's tortious conduct, $100,255.00. Punitive damages under CUTPA, $100,000.00. Attorneys fees to be determined. Total award $200,255.00 plus attorneys fees.

*5 Judgment is rendered against Searles and Houser individually. The Court finds for the defendant, Searles & Houser, LLC.

1999 WL 669824 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works